IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VIZIO, INC., | : | No. 3:15-cv-00929 (VAB) |
|     *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT KLEE, | : | |
|     *Defendant.* | : | SEPTEMBER 16, 2016 |

**REPLY BRIEF IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

In its opposition brief Plaintiff abandons the only extraterritoriality theory that this Court permitted Plaintiff to replead, and substitutes that theory for one that this Court already has rejected with prejudice. In doing so Plaintiff disregards this Court's orders, and also ignores (or simply refuses to accept) the limited scope of the extraterritoriality doctrine. Simply put, because Plaintiff does not and cannot dispute that it remains free to conduct every aspect of its business outside of Connecticut however it sees fit—including all decisions related to the pricing and sale of its products—the extraterritoriality doctrine simply does not apply.

**ARGUMENT**

In its initial Complaint Plaintiff advanced a number of theories about why the E-waste Law supposedly violates the extraterritoriality doctrine, including that: (1) the law directly controls Plaintiff's pricing decisions in other states; (2) Plaintiff is forced to register and comply with the law in order to sell out-of-state; and (3) the E-waste Law effectively "regulates" Plaintiff's out-of-state sales because Plaintiff's out-of-state sales influence the amount of its liability in Connecticut. (*See* Doc. No.

1

36 ("MOD") at 16-26; Doc. No. 28 at 1-6). The Court dismissed all three of those theories. (MOD at 17-21 (direct price control); *id.* at 22-23 (forced compliance); *id.* at 24-26 (out-of-state sales impact in-state liability)). And the Court did so with prejudice for everything except the direct price control theory. (*Id.* at 27).

Despite the limited basis upon which the Court permitted Plaintiff to replead its claims, Plaintiff does not even pretend to argue in its brief that the E-waste Law directly controls interstate prices (because it cannot plausibly make that argument). Instead, Plaintiff now attempts to repackage its third extraterritoriality theory discussed above—which this Court dismissed with prejudice—by arguing that the E-waste Law effectively "intrudes" on Plaintiff's interstate pricing decisions because those decisions indirectly impact Plaintiff's regulatory burden in Connecticut. More specifically, Plaintiff appears to argue that national market share is solely a function of price.[1] Because of that purported "inverse relationship" between price and national market share, the use of national market share data to calculate recycling costs somehow operates to impermissibly "regulate" Plaintiff's pricing decisions in other states. (*E.g.,* Pl. Br. at 1, 5-6, 10). Or so the theory goes.

---

[1] Defendant will not quibble about whether the Court must accept this allegation as true for purposes of this motion, since it is irrelevant to the legal issues for the reasons discussed below. But it bears noting that this factual premise of Plaintiff's argument is patently absurd and implausible. There are countless variables that contribute to a manufacturer's national market share, including but not limited to the quality of its products, its access to the market through its retail customers, the quality of post-sale services and support it provides to the end consumer, the quality of its branding and marketing, and countless other considerations. The national market share model does not "control," "regulate" or "intrude" on those other considerations any more than it does price. That is to say, it does not control or regulate those considerations at all.

Of course, in making this claim Plaintiff fails to acknowledge that its high market share means that more of its products currently are entering the stream of commerce, and by extension, that there are more of its products that eventually will have to be recycled. ***That*** is why Plaintiff pays more recycling costs under the E-waste Law, not because it charges low prices.

Indeed, under Plaintiff's theory the low prices that it charges will lead to higher recycling costs under ***any*** cost-apportionment model. That is because ***every*** cost-apportionment model—including the return share model that Plaintiff prefers and concedes is permissible—ultimately ties each manufacturer's recycling costs to the volume of products that it places into the stream of commerce (and ultimately into the recycling stream). Thus, if price is what determines how many products a manufacturer sells, and if tying recycling costs to the volume of products that a manufacturer sells is *per se* unconstitutional as Plaintiff contends, then ***every*** cost-apportionment model—indeed, the entire concept of extended producer responsibility laws—also would be *per se* unconstitutional. But that obviously is not the case because Plaintiff concedes that extended producer responsibility laws in general (and return share models in particular) are both constitutionally permissible and a good idea. (*E.g., Amend. Compl.* at ¶¶1, 2, 4, 46; *see also, e.g.,* Doc. No. 1 at ¶¶8, 59-60). Plaintiff cannot now turn around and challenge just the national market share model on this ground for no other reason than that Plaintiff does not like the way that particular model currently affects Plaintiff's bottom line.

In any event, putting these internal inconsistencies within Plaintiff's own argument aside, the fact of the matter is that Plaintiff's theory simply does not fall within the narrow scope of the extraterritoriality doctrine.

First, to the extent that Plaintiff offers its argument under a theory of direct interstate price control—which is the only theory that the Court permitted Plaintiff to replead—it is frivolous. The E-waste Law does not directly control interstate prices or pricing decisions, and any incidental and indirect impact that the E-waste Law may have on Plaintiff's pricing decisions is not sufficient to state a claim under that theory. (MOD at 17-21, 27).

Second, to the extent that Plaintiff continues to advance a different theory under which a state law somehow is **per se** unconstitutional just because a seller's discretionary pricing decisions in other states might indirectly impact its regulatory obligations in Connecticut, no court has ever recognized such a remarkable theory under the *per se* extraterritoriality doctrine.[2] In fact, this Court expressly has rejected it, with prejudice no less. (*Id.* at 24-26, 27).

Specifically, in its prior ruling this Court acknowledged Plaintiff's argument that its out-of-state sales (which necessarily include the pricing decisions upon which those sales are based) will "influence the amount that Plaintiff must pay

---

[2] In reality Plaintiff's claim in this regard is that the law incidentally and indirectly burdens Plaintiff's interstate pricing decisions, not that it directly controls or regulates them. To the extent that such a claim is cognizable under the dormant Commerce Clause at all, it properly would be analyzed under the *Pike* balancing test. There is no *Pike* claim currently before the Court, but if there were it would fail for the reasons stated in Defendant's first motion to dismiss and the Court's ruling thereon. (MOD at 9-15; Doc. No. 21-1 at 12-18; Doc. No. 28 at 7-10).

4

under the E-waste Law for recycling e-waste collected in Connecticut." (MOD at 26). But the Court squarely held that the fact that such out-of-state decisions "have local impacts in Connecticut does not in any way equate to extraterritorial 'regulation'" or "control" that could violate the extraterritoriality doctrine, since "Plaintiff is free to make [its sales and pricing decisions] whenever and however it wants." (*Id.*). The Court's ruling in that regard was correct, is the law of the case, and the Court should adhere to it. *E.g., Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (court should adhere to prior rulings on an issue in the case "unless cogent and compelling reasons militate otherwise") (quotation marks omitted).

That conclusion is not altered by Plaintiff's newfound reliance on *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989), which Plaintiff previously cited only in passing but which is now the sole case upon which Plaintiff relies for this theory. (Pl. Br. at 5-8). In fact, if anything *Healy* demonstrates why the extraterritoriality doctrine ***does not*** apply here.

In *Healy* the State confronted a situation in which domestic beer prices consistently exceeded the prices in neighboring states, which created a competitive disadvantage for in-state sellers. To eliminate that pricing disparity and protect in-state sellers from out-of-state competition, the State passed a "price affirmation" statute that explicitly required "out-of-state shippers to affirm that their posted prices [in the State] are no higher than prices in the border States . . . ." *Healy*, 491 U.S. at 326, 328-29, 337-40. Thus, by definition the statute at issue in *Healy* was a price control statute the avowed purpose of which was economic protectionism.

5

The Supreme Court found the statute to be unconstitutional, but not for any of the reasons that Plaintiff complains about in its brief. Specifically, the Court did not hold, or even remotely suggest, that the statute was problematic simply because sellers' wholly discretionary pricing decisions in other states might indirectly lead to adverse regulatory impacts in the regulating state, especially when (as here) those adverse regulatory impacts have nothing at all to do with price control or protecting in-state economic interests.

To the contrary, the fundamental premise of the Court's analysis in *Healy*—as in every legitimate dormant Commerce Clause challenge—was that the State had engaged in economic protectionism. More importantly, the reason that the statute fell within the narrow and severe *per se* framework of the extraterritoriality doctrine was that the sellers' out-of-state pricing decisions **were not** discretionary, and were instead **directly controlled and restricted** by the statute. *Id.* at 337-40. In particular, the statute directly prevented sellers from changing the price of their products in other states once they affirmed their in-state prices. The statute also affirmatively restricted the extent to which sellers could offer promotional prices and volume discounts in other states based on local market conditions. And the Court emphasized that all of this was compounded by the pricing "gridlock" that would occur if other states enacted similar laws. *Id.*

In sum, *Healy* turned on several factors that are at the core of the dormant Commerce Clause: (1) the statute was a blatant attempt to engage in economic protectionism; (2) the law advanced that impermissible goal by directly controlling

when and how sellers could set and change their prices in other states; (3) the law prevented out-of-state sellers from implementing competitive pricing practices in other states based on local market conditions; and (4) there was a risk of regulatory "pricing gridlock" among the several states. *Id.* at 338-40.

The E-waste Law does not implicate *any* of these concerns. First, the E-waste Law has nothing to do with economic protectionism. In particular, it has neither the purpose nor the effect of protecting in-state television manufacturers from out-of-state competition, whether in the form of price controls or otherwise. In fact, there are no in-state television manufacturers for the State to protect even if it wanted to. And even if there were, Plaintiff does not allege that the State has provided any advantage or benefits to those purported in-state manufacturers compared to their out-of-state competitors.

Rather, the E-waste Law is nothing more than geographically neutral health and safety legislation that imposes the same recycling cost model on all manufacturers—regardless of where they are located—in order to mitigate the e-waste problem in Connecticut. The concern about economic protectionism that was the lynchpin of *Healy*—and of every other legitimate dormant Commerce Clause challenge—therefore simply does not apply.

Second, as previously discussed the E-waste Law plainly does not control or regulate interstate prices or pricing mechanisms, whether directly or otherwise. Unlike the out-of-state beer sellers in *Healy*, therefore, Plaintiff and other manufacturers remain free to set and change their prices in other states whenever

7

and however they want. (MOD at 26; Doc. No. 44-1 at 8-13). Plaintiff does not even pretend to argue otherwise in its brief.

Third, as far as the E-waste Law is concerned Plaintiff and other out-of-state manufacturers are free to offer promotional prices, volume discounts, and any other "competitive pricing strategies" in other states that they deem appropriate based on the local market conditions in those states. Importantly, moreover, manufacturers may do so without regard to the prices that they charge in Connecticut and without regard to whether they choose to offer similar pricing strategies in Connecticut. *Compare Healy*, 491 U.S. at 338-39. Further, Connecticut does not exercise **any** scrutiny or oversight over such decisions should Plaintiff choose to make them. As a result, the E-waste Law does not remotely implicate the concern expressed in *Healy* about statutes that deprive out-of-state sellers of their ability to take advantage of local market conditions when determining how to price and sell their products in other states.

Fourth, although several states have adopted legislation similar to the E-waste Law, Plaintiff does not and cannot allege that those statutes have created the type of pricing "gridlock" that the Supreme Court was concerned about in *Healy*. Again, that is because the E-waste Law and similar laws in other states simply have nothing to do with regulating or controlling price.

Ultimately, *Healy* does not remotely support Plaintiff's extraterritoriality claim. To the contrary, *Healy* demonstrates precisely why the extraterritoriality doctrine does not apply in the circumstances of this case.

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

        Respectfully submitted,

        DEFENDANT ROBERT KLEE, in his official capacity as the Commissioner of the State of Connecticut Department of Energy and Environmental Protection

        GEORGE JEPSEN
        ATTORNEY GENERAL

BY: */s/ Michael K. Skold*
      Michael K. Skold (ct28407)
      Assistant Attorney General
      Office of the Attorney General
      55 Elm Street
      Hartford, CT 06141
      860-808-5020 (phone)
      860-808-5347 (fax)
      Michael.Skold@ct.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2016, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Michael K. Skold*
Michael K. Skold
Assistant Attorney General